IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANNY DOUGLAS MEADOWS, JR., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Civil Action No. 7:17CR00005 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> Senior United States District Judge |

Danny Douglas Meadows, Jr., a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The Government filed a motion to dismiss Meadows' petition. Thereafter, the Clerk of Court issued Meadows a Roseboro notice informing him that he had the right, but no obligation, to submit a response to the Government's motion in further support of his claims. ECF No. 270. Meadows has not provided the court with further information. The matter is thus ripe for consideration. For the reasons stated, the court will grant the Government's motion to dismiss and deny Meadows' motion.

## Background

On January 19, 2017, a federal grand jury issued a multi-count indictment, charging Meadows and several other defendants with drug-related crimes. Count One charged Meadows and others with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846. Counts Two and Four charged Meadows with distribution and possession with intent to distribute methamphetamine, respectively, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). ECF No. 3.

### *Guilty Plea*

On May 2, 2017, Meadows pled guilty to Count One. ECF No. 127. In his written plea agreement, Meadows agreed to "waive any right [he] may have to collaterally attack, in any future

proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel." Id. at 8. Meadows stipulated that his offense level under the United States Sentencing Guidelines should account for 500 to 1,500 grams of methamphetamine and possession of a dangerous weapon. Id. at 3. Meadows further agreed that, at the time of his plea agreement, he had "no dissatisfaction or complaint with [his] attorney's representation," and agreed to inform the court of any such complaint "no later than at the time of sentencing." Id. at 11. Pursuant to that agreement, the Government moved for dismissal of Counts Two and Four against Meadows. Id. at 2; ECF No. 189.

Meadows later appeared before the court for a plea hearing. ECF No. 265, May 2, 2017 Hr'g Tr. ("Plea Transcript"). During the hearing, the court conducted a thorough Rule 11 colloquy. See Fed. R. Crim. P. 11. As part of the plea colloquy, the court questioned Meadows about his understanding of the plea agreement. Meadows affirmed that he understood the agreement. Plea Transcript at 7–10. The court specifically inquired whether Meadows was voluntarily pleading guilty and whether he was satisfied with his attorney's representation. Id. at 11. Meadows affirmed that he was satisfied with all the elements of his attorney's services in his case, including counsel's work in gathering facts. Id. at 31, 38–39. The court further established that Meadows had spoken with his attorney about how the United States Sentencing Guidelines might apply in his case. Id. at 14–15. Later, Meadows agreed under oath that he was responsible for between 500 and 1,500 grams of methamphetamine. Id. at 34.

During that same hearing, Meadows' counsel relayed that there had been some points of contention between himself and the Government while negotiating Meadows' plea agreement. Id. at 10 ("There were some initially, I won't say sticking points, but . . . the two-point enhancement, was added because when there was a search warrant where some drugs were found, he had his

2

grandfather's shotgun and groundhog rifle sitting in the corner. So I guess, under the present standard of the two-point enhancement, it's a point well taken."). The court acknowledged counsel's argument, and noted that these facts "may be a mitigating factor down the road." Id.

*Sentencing*

On August 31, 2017, the probation officer assigned to Meadows' case prepared a presentence investigation report (the "PSR"). ECF No. 192. The PSR described Meadows as one of three "street-level dealers" in the drug conspiracy, alongside two other co-conspirators described as "mid-level dealers," another defendant who was responsible for obtaining "pound quantities" of methamphetamine, and one defendant who "directed large amounts of methamphetamine into southwest Virginia." Id. at 6. Meadows entered the conspiracy after a co-defendant told him that "he had a lot of methamphetamine and wanted to do business." Id. at 8.

The PSR also recounted that a search pursuant to a warrant yielded four firearms located in Meadows' home, along with baggies, digital scales, methamphetamine, other drugs, and drug paraphernalia. Id. at 7, 13. The PSR relayed that Meadows made a Mirandized statement to investigators after his arrest, in which he admitted to purchasing nearly 1,400 grams of methamphetamine for distribution, including over 500 grams in a two-day period. Id. at 7–8. The PSR computed Meadows' recommended sentence under the Guidelines using amount of methamphetamine that Meadows had admitted to, leading to a base offense level of 30. Id. at 13.

Ultimately, the PSR recommended a net decrease in Meadows' offense level. After applying a two-level enhancement for the firearms, U.S.S.G. § 2D1.1(b)(1), the PSR recommended a 3-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a)–(b), resulting in an offense level of 29. Id. at 14. However, the PSR did not adjust the offense level based on Meadows' role in the offense. Id. After finding that Meadows had a criminal history category of

3

II, the PSR calculated a recommended Guideline sentence of 97–121 months. Id. at 15, 18. In addition, the PSR stated that if Meadows had not received credit for acceptance of responsibility, his recommended sentence under the Guidelines would have been 135–168 months. Id. at 18.

On August 24, 2017, Meadows appeared before the court in a sentencing hearing. Meadows did not object to the factual findings or calculations in the PSR, and the court adopted the PSR. ECF No. 264, Aug. 24, 2017 Hr'g Tr. ("Sentencing Transcript") at 4–7. Meadows' counsel also presented mitigation evidence at the hearing. For example, counsel questioned Meadows extensively about the guns found in his residence, asking who the guns belonged to, where they were located, and what they were used for. Id. at 13–14. In response to these questions, Meadows testified that three of the four guns found were used for hunting—not to "protect" any methamphetamine—and that the guns belonged to Meadows' grandfather at one time and Meadows' cousin. Id. Meadows conceded, however, that a pistol was in the house, lying on a coffee table, in addition to two rifles and a shotgun. Id.

The court was also made aware that Meadows was not a leader in the conspiracy. See Sentencing Transcript at 24 (contrasting Meadows to "the people at the top of the conspiracy"); see also Plea Transcript at 35 (Government proffering that "Mr. Meadows was a fairly late joiner, an early exiter from this conspiracy"). In sentencing Meadows, the court concluded that the recommended sentence under the Guidelines was "way too high." Sentencing Transcript at 21. After considering the factors set forth in 18 U.S.C. § 3553(a), the court sentenced Meadows to 66 months of incarceration, well below the Guideline-recommended range of 97–121 months. ECF No. 190.

### *Section 2255 Petition*

Meadows filed his § 2255 petition on August 14, 2018, alleging various forms of

ineffective assistance of counsel. ECF No. 248 at 5–6. Meadows' allegations include that his counsel "failed to conduct pre-trial investigation or obtain the facts relevant to [his] case"; "failed to contact and obtain favorable witness testimony to prepare a defense against the charged crime and sentencing enhancement"; "failed to challenge the sentencing enhancement"; and "failed to argue that [Meadows] was a minor role participa[nt] and seek additional downward points for his minor role." Id.

Meadows fails to describe how his counsel failed in those regards. Rather, Meadows in effect provides the reasons he disagrees with the court's sentencing order. For example, Meadows argues that he lived in his father's house at the time of his arrest, and that the firearms were his father's "hunting guns and had absolutely nothing to do with" Meadows' crimes. Id. Thus, according to Meadows, the two-point sentencing enhancement should not have been applied. However, Meadows does not identify any facts that his counsel failed to bring to the court's attention or other witnesses that counsel should have spoken to and what they might have told the court. Likewise, Meadows further alleges that the drug weight used to calculate his sentence was "much more" than Meadows' "actual involvement." Id. Meadows does not, however, state what drug weight his counsel should have argued for at sentencing. Finally, Meadows does not provide further facts that would support the conclusion that he was a minor participant in the drug conspiracy.

The Government has moved to dismiss Meadows' petition. ECF 269. To begin, the Government argues that Meadows waived his right of collateral attack. Next, the Government argues that Meadows has not shown ineffective assistance of counsel. And finally, the Government addresses the substance of Meadows' arguments, arguing that the sentence was properly imposed.

5

## Standard of Review

There are three avenues for relief under § 2255. A petitioner can prove that his sentence was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Alternatively, a petitioner may prove that "the court was without jurisdiction to impose such a sentence." Id. Finally, a petitioner may prove that that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Id. Meadows bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). In deciding a § 2255 motion, the court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## Discussion

### I. The Scope of Meadows' Collateral Attack Waiver

To begin, the court will address Meadows' claims on the merits, rather than holding that they are barred by the waiver within his plea agreement. A plea agreement is a contract. Accordingly, courts must apply "standard contract law," and "enforce a plea agreement's plain language." United States v. Jordan, 509 F.3d 191, 195 (4th Cir. 2007) (internal quotation marks and citations omitted). The Government argues that Meadows' ineffective assistance claims are merely a fig leaf for his substantive disagreements with his sentence. That may be. But the Government negotiated a plea agreement that expressly allowed Meadows to bring a collateral attack "based on ineffective assistance of counsel." ECF No. 127 at 8; compare id. with United States v. Lemaster, 403 F.3d 216, 218 (4th Cir. 2005) (ruling that defendant waived all rights of collateral attack by agreeing "I waive any right I may have to collaterally attack, in any future proceeding, my conviction and/or sentence imposed in this case"). Even if Meadows' claims are

only tenuously "based on" his bare assertions of ineffective assistance of counsel, the court resolves that question in Meadows' favor. See United States v. Barefoot, 754 F.3d 226, 246 (4th Cir. 2014) ("[A]ll ambiguities in the Plea Agreement are to be construed against the government as its drafter."); see also United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994) ("The government gets what it bargains for but nothing more.").

## II.     Meadows' Claims of Pre-Sentencing Ineffective Assistance of Counsel

Nevertheless, a defendant is bound by his sworn statements that he was satisfied with his counsel's services unless he presents clear and convincing evidence showing why he should not be so bound. Fields v. Attorney General of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). As a result, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict [a] petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." Lemaster, 403 F.3d at 221 (internal citations and quotation marks omitted). Where a petitioner fails to demonstrate such circumstances, courts "should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 222.

Here, Meadows agreed under oath that he was satisfied with his counsel. Plea Transcript 38–39; ECF No. 127 at 11. Meadows provides only conclusory allegations regarding the actions of his counsel. He certainly provides no clear and convincing evidence that he should not be bound by his Rule 11 colloquy. This failure alone presents grounds for dismissing Meadows' claims of ineffective assistance regarding his counsel's pre-plea investigation, which rely on allegations contradicting his sworn testimony.

The court is constrained to deny any remaining claims as well. To succeed on a claim of ineffective assistance, a defendant must satisfy the two-prong test set forth in Strickland v.

Washington, 466 U.S. 668 (1984). Specifically, a defendant must show: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's performance was prejudicial. Strickland, 466 U.S. at 687–88. Under the first prong, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. To satisfy the second prong, the defendant must demonstrate that there is a reasonable probability that his attorney's errors altered the outcome of the proceeding. Id. at 694.

The court first addresses Meadows' ineffective assistance claims that relate to the substantive defense of the crimes charged against him. To satisfy the prejudice prong of a claim of ineffective assistance of counsel in the context of a guilty plea, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Mooney, 497 F.3d 397, 404 (4th Cir. 2007). Meadows never alleges that he would have proceeded to trial, even in conclusory fashion, had his counsel been more effective. Thus, the court dismisses Meadows' claims regarding the substantive defense of his case.

### III. Meadows' Claims of Ineffective Assistance of Counsel at Sentencing

Next, the court turns to Meadows' claims related to his sentencing. Meadows claims that his counsel did not investigate the facts surrounding the guns that led to Meadows' sentencing enhancement, did not argue for a reduced sentence based on the drug weight attributable to Meadows, and failed to investigate Meadows' role in the drug conspiracy. Having reviewed the record in this case, the court concludes that Meadows cannot establish that his counsel provided ineffective assistance at sentencing.

The record fails to support Meadows' claims. For example, the transcripts of the hearings make clear that counsel specifically raised the firearms issue that Meadows references in his §

8

2255 motion, and developed facts to that effect for the record. Plea Transcript at 10; Sentencing Transcript at 13–14. Meadows' counsel and the PSR also made the court well aware of Meadows' role in the criminal conspiracy, although Meadows' counsel did not specifically request that the court apply a sentence reduction under U.S.S.G. § 3B1.2. Sentencing Transcript at 24. In addition, the drug weight attributed to Meadows at sentencing was consistent with the terms of his plea agreement and his own testimony at the plea hearing. See PSR at 7–8; Plea Transcript at 34; ECF 127 at 3.

The court must also deny Meadows' claim that his counsel was ineffective in arguing against application of the firearm enhancement. The relevant Guideline provision states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. 2D1.1(b)(1). Application note 3 to § 2D1.1 provides that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." The United States Court of Appeals for the Fourth Circuit has recognized that several factors are relevant in determining whether a defendant possessed a firearm in connection with a drug activity. United States v. Manigan, 592 F.3d 621, 629–32 (4th Cir. 2010). "One important factor is the type of firearm involved," because "an unloaded hunting rifle is a firearm that would not be readily connected to drug activities. A handgun, on the other hand, has been deemed 'a tool of the drug trade because it is easy to conceal yet deadly.'" Id. (quoting United States v. Cantero, 995 F.2d 1407, 1411 (7th Cir. 1993)). Courts may also consider the location of a firearm, because "firearms that are readily accessible during drug activities can be deemed as possessed in connection there-with." Id.

Here, Meadows admitted to possessing a handgun, which was found on a coffee table in the house in which he was arrested, and that drugs were found at that residence. Sentencing Transcript at 13–14. Although defense counsel argued against the firearm enhancement in an objectively reasonable fashion, applying the firearm enhancement was proper in light of Meadows' own admissions. Manigan, 592 F.3d at 632 (affirming firearm enhancement where drug-supplier defendant possessed handguns in the location in which he stored narcotics).

In sum, counsel's reasonably available actions were cabined in by on-point case law and Meadows' own admissions. Under these circumstances, the court cannot conclude that Meadows' counsel performed below an objective standard of reasonableness in Meadows' sentencing. See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

Meadows' allegations also fail to support a finding of prejudice. To establish the prejudice prong of ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See, e.g., United States v. Rangel, 781 F.3d 736, 746 (4th Cir. 2015) (noting that a "reasonable probability" that the outcome of a sentencing would change is enough to show prejudice). Here, the court addresses Meadows' claim that his counsel was deficient for not seeking a guideline reduction on the grounds that Meadows was a "minor participant" in the overall conspiracy under U.S.S.G. 3B1.2(b), because that provision was not explicitly addressed before the court during Meadows' plea or sentencing hearings.

Section 3B1.2 of the Guidelines provides for a two-to-four-level reduction where the district court finds that the defendant's role in the offense was "minimal," "minor," or somewhere in between. U.S.S.G. § 3B1.2. The commentary states that § 3B1.2 is intended to cover only "a

defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." Id. § 3B1.2 cmt. n. 3(A). In defining "minimal participant," the commentary provides that the four-level reduction applies to a defendant who is "plainly among the least culpable of those involved in the conduct of a group" and that relevant to this determination is a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and the activities of others." Id. § 3B1.2 cmt. n. 4. A "minor participant," warranting a two-level reduction, is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." Id. § 3B1.2 cmt. n. 5. Furthermore, application note 3A permits, but does not require, a § 3B1.2 reduction even if a defendant is only held accountable for his or her own relevant conduct. Id. § 3B1.2 cmt. n. 3(A). Finally, application of the mitigating role reduction is fact-specific and "based on the totality of the circumstances." Id. cmt. n. 3(C).

Upon review of the record, the court concludes that Meadows is unable to establish that he was prejudiced by his attorney's failure to explicitly request a reduction under § 3B1.2. It is not reasonably probable that the court would have found Meadows to be a "minor participant" in the overall conspiracy, see Rangel, 781 F.3d at 746, and Meadows' imposed sentence would have been less than the recommended sentence even if the court had found Meadows to be a minor participant.

Viewed in totality, the record conclusively fails to support a minor participant reduction. To be sure, Meadows was a street level dealer. Yet the Fourth Circuit has ruled that even drug couriers "are often essential to drug conspiracies. They participate directly in the exchange of drugs for money and are the means by which those drugs move from distributor to customer." United States v. Guerrero-Deleon, 713 F. App'x 163, 166 (4th Cir. 2017). Meadows admitted to trafficking approximately 1,400 grams of methamphetamine: a significant amount. Meadows also

11

admitted to law enforcement that he had purchased $20,000 worth of methamphetamine from his co-conspirator, Fitzgerald. Id. (affirming denial of reduction where defendant transacted in $18,500 worth of methamphetamine).

Furthermore, Meadows was only held accountable for the amount of drugs he personally admitted to holding, and his role as a street-level dealer was essential to the drug conspiracy. See United States v. Franklin, 350 F. App'x 816, 817 (4th Cir. 2009) (affirming denial of reduction on the same grounds). As a result, the record conclusively fails to support a reasonable probability that Meadows would have received a minor participant reduction, even if his counsel had expressly advocated for it before the court.

Finally, even if the court had found that Meadows was a minor participant in the offense, Meadows' recommended sentence under the Guidelines would have still been higher than the sentence imposed by the court. The court found that an offense level of 29 and a criminal history of II applied to Meadows' sentencing, which resulted in a Guideline-recommended sentence of 97 to 121 months. ECF No. 190. If the court had applied a minor participant reduction to Meadows' sentence, the offense level would have been 27, which combined with a criminal history of II, would result in a recommended sentence of 78 to 97 months. Here, the court sentenced Meadows to 66 months of incarceration, below even this hypothetically-reduced recommended sentence. ECF No. 189. Thus, it is not reasonably probably that Meadows would have received a lower sentence—even if the court had granted him a minor participant reduction. Accordingly, Meadows was not prejudiced by his counsel's failure to explicitly argue for the reduction. See Rangel, 781 F.3d at 746.

Because Meadows cannot show constitutionally ineffective assistance of counsel either before his plea or at sentencing, the court must grant the Government's motion and dismiss

12

Meadows' § 2255 petition.

## Conclusion

For the reasons stated, the court will grant the Government's motion and deny Meadows' motion. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and all counsel of record.

DATED: This 20th day of December, 2019

_____
Senior United States District Judge